UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

------------------------------------------------------- x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE CONFLICT ID NUMBER:

205246 (YOOX CORPORATION).

1:26-MC-03703-BMC-JAM

------------------------------------------------------- x

**Parties and Representatives**:

Crowell & Moring LLP (“Crowell”)
on behalf of YNAP Corporation (“YNAP”)
Debrah B. Arbabi
3 Park Plaza, 20th Floor
San Francisco, CA 94104
(949) 798-1318
darbabi@crowell.com
Counsel for Crowell on behalf of YNAP

Spectrum Settlement Recovery (“Spectrum”)
on behalf of Cascade Settlement Services LLC (“Cascade”)
Joey Hodges
P.O. Box 480
Irvine, CA 92614
(415) 263-9177
clientservice@spectrumsettlement.com
Representative of Spectrum

Rule 23(b)(3) Class Plaintiffs (the “Class”)
Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

## I. Background

Crowell and Spectrum have both registered with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of the payment card transactions of Yoox Corporation ("Yoox"), which has a Taxpayer Identification Number ("TIN") ending in 8780 (the "Yoox TIN").[1] Spectrum contends that its affiliate Cascade purchased Yoox's *MDL 1720* claim in 2013. Crowell is a TPF and argues that its client YNAP is entitled to the claim because it gained control of Yoox's TIN following a merger between Yoox Group (Yoox's corporate parent) and Net-A-Porter Group to form YNAP in 2015 , after which all of the merged entities' payment card transactions were attributed to the Yoox TIN.[2] The record before me includes the following documents:

- Asset Purchase and Sale Agreement between Cascade as purchaser and Yoox as seller of Yoox's *MDL 1720* claim ("2013 APSA");
- Mastercard/Visa Interchange Fees Authorization and Representation Agreement dated October 30, 2024 between Crowell and YNAP authorizing the Class Administrator to represent it with respect to the *MDL 1720* claims of

---

[1] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class (the "Class"), a party must first register that merchant's TIN with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that merchant TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only one approved registrant for a given TIN, the registrant may submit a claim for that TIN. In cases where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

[2] A TPF is a business that enters into agreements with merchants to register and prosecute their claims of settlement funds in exchange for a portion of the merchants' recovery. *See MDL 1720*, 2014 WL 4966072, at *4 (E.D.N.Y. Oct. 3, 2014) (describing "the business of third-party claims filing companies").

five TINs, including the one at issue here ending in 8780 ("2024 Authorization");

- Letter from Spectrum to Special Master dated August 26, 2025 ("Spectrum 8/26/25");
- Letter from Crowell to Special Master dated August 28, 2025 ("Crowell 8/28/25");
- Letter from Spectrum to Special Master dated September 12, 2025 ("Spectrum 9/12/25");
- Letter from Crowell to Special Master dated September 12, 2025 ("Crowell 9/12/25");
- Letter from Spectrum to Special Master dated September 17, 2025 ("Spectrum 9/17/25"); and
- Letter from Crowell to Special Master dated September 17, 2025 ("Crowell 9/17/25").

II. Analysis

The parties agree that Spectrum has the right to recover on Yoox's *MDL 1720* claim. *See* Crowell 8/28/25 at 2 ("YNAP Corporation does not dispute Spectrum's right to recover the YOOX Corporation's *Interchange* claim."). As Crowell frames the issue, "[t]he dispute … encompasses the fair apportionment of financial data co-mingled in YNAP Corporation's disputed TIN." *Id*. I disagree with that framing.

The claim at issue is associated with the Yoox TIN. The record is clear that in 2013, Yoox wholly owned that claim and sold it to Cascade. *See* 2013 APSA at 1, Recital E ("The Parties intend to transfer from [Yoox] to [Cascade] any and all of the [Yoox's] right, title and interest in and or associated with, or connected in any manner to, any Asset that may arise from the [*MDL 1720*] Litigation"). To the extent that the parties now disagree about how to divvy up the recovery on that claim, the dispute springs from the 2015 merger agreement. Although Crowell has not submitted a copy of that merger agreement, I take at face value its uncontested

assertion that on October 5, 2015, Net-A-Porter and Yoox "merged and rebranded as Yoox Net-A-Porter (YNAP) Corporation." Crowell 8/28/25 at 4. Nor do I question the proposition that "YNAP adopted [the Yoox TIN] for all U.S. operations as part of the merger/rebrand." *Id*. But as far as the record reveals, the parties to that merger agreement made no provision to avoid commingling future transactions of Yoox and Net-A-Porter under the Yoox TIN or to account for the fact that Yoox had previously sold the *MDL 1720* claim associated with that TIN. Had the parties to the 2015 merger agreement secured a new TIN for the new YNAP entity formed from the merger, the instant dispute would not have arisen.

At bottom, neither party takes issue with the idea that the owner of a TIN gets to dispose of the *MDL 1720* claim associated with it. In 2013, Yoox owned the claim associated with the Yoox TIN and exercised its right to sell that claim to Spectrum's affiliate Cascade. In particular, the 2013 APSA conveyed from Yoox to Cascade "any and all of the [Yoox's] right, title and interest in and or associated with, or connected in any manner to, any Asset that may arise from the [*MDL 1720*] Litigation." 2013 APSA at 1 (Recital E). When YNAP assumed control of the same TIN from Yoox two years later, neither party to the merger owned the *MDL 1720* claim associated with that TIN. As a result, the new entity formed in that merger could not and did not own that claim.

Crowell complains that "[a] miscarriage of justice would occur if Spectrum is awarded full recovery of the disputed TIN as that would deprive YNAP of its rights to recover funds owed for the majority of its business which is unrelated to legacy YOOX." Crowell 9/17/25 at 2. It also acknowledges, however, that Yoox's "legacy e-commerce sales" accounted for a significant portion of YNAP's post-merger sales. Crowell 8/28/25 at 3; *see id*. at 4 (chart ascribing $1.6 billion to "Legacy Net-A-Porter Total US Revenue 2016-2019" and $480 million

to "Legacy YOOX Total US Revenue 2016-2019"). Thus, the same type of unjust windfall Crowell decries – but even greater in magnitude – would result from acceding to its demand to "clear the conflict in YNAP Group's favor." Crowell 9/17/25 at 3.

Crowell does not directly acknowledge that potential injustice but does say that if it prevails here, it "will provide Spectrum with 25% of the total recovered funds from the disputed TIN to account for its YOOX Corporation claim purchase." *Id*. That proposal plainly results in the unwarranted transfer of settlement funds from Spectrum to YNAP: there is no question that as a result of the 2013 claim purchase, Spectrum is entitled to 100 percent of the recovery corresponding to Yoox's sales from the start of the class period in 2004 through the date of the merger in 2015. But under Crowell's proposal, Spectrum would receive only a quarter of that recovery. For the much shorter period of 2016 to 2019, the 25 percent Crowell proposes to provide to Spectrum is roughly equivalent to the proportion of YNAP sales during that period attributable to Yoox ($480 million is just over 23 percent of the total of 2.08 billion in post-merger sales Crowell describes). Crowell thus proposes to avoid the injustice of appropriating all of the recovery to which Spectrum is entitled by taking only three-quarters of it. I respectfully recommend against that result.

No party currently suggests that one side or the other has a legal right to just a portion of the recovery to be allocated to the Yoox TIN. To the contrary, each insists that the entire recovery belongs to one side or the other and that any splitting of the proceeds thereafter is a matter of the claim-owner's grace. I agree. There is only one party that owns the claim arising from the Yoox TIN, and that party is Spectrum, which unquestionably bought the claim associated with that TIN in 2013.

I do not discount the possibility that YNAP may have some enforceable right against some other party to recover an amount based on the proportion of YNAP's post-merger sales that is attributable to what Crowell calls "Legacy Net-A-Porter Total US Revenue." But YNAP must assert any such claim against whatever party YNAP contends is liable to it rather than as a direct claim for a portion of the settlement fund. Crowell has not mentioned the possibility of any such lawsuit, and I do not address its merits here. Even if YNAP did seek to assert a claim against some other party for a portion of the recovery on the claim associated with the Yoox TIN, I would recommend against adjudicating any such claim within the *MDL 1720* litigation. As this Court has already held, such ancillary claims "do not fall under this Court's retained settlement jurisdiction" but must instead be litigated "in independent lawsuits, outside of MDL 1720." *In re MDL 1720 Damages Class Settlement Disps.*, 2026 WL 2389790, at *1 (E.D.N.Y. Aug. 17, 2026).

## III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court direct the Class Administrator to process Spectrum's registration of the Yoox TIN and withdraw Crowell's, without prejudice to any claim Crowell's client YNAP may assert against Spectrum in a separate action.

## IV. Objections

This Report and Recommendation will be served on all registrants who are parties to the instant conflict via the Court's ECF system, and the Class Administrator will also promptly provide a copy to all such registrants. Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03703-

BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMC-JAM, Doc. 3, ¶ 4.

Dated: September 15, 2026

*/s/ James Orenstein*
Special Master